No. 30,299.

GEORGE A. MOSBY, *Appellee*, v. THE MANHATTAN OIL COMPANY, THE INDEPENDENT OIL AND GAS COMPANY and THE PHILLIPS PETROLEUM COMPANY, *Appellants*.

(8 P. 2d 325.)

Opinion filed March 5, 1932.

*E. S. McAnany, M. L. Alden, T. M. Van Cleave,* all of Kansas City, and *H. H. Booth,* of Kansas City, Mo., for the appellants.

*A. L. Berger,* of Kansas City, *H. M. Langworthy, Byron Spencer* and *Frank H. Terrell,* all of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by the owner of a pasture against several oil companies, for damages caused by pollution of the stream supplying water for the pasture. Plaintiff recovered, and defendants appeal.

The petition contained three causes of action. In the first cause of action it was alleged that plaintiff lost the use of his pasture for the year 1927. A demurrer to plaintiff's evidence was overruled, and the jury returned a verdict for plaintiff for damages in the sum of $5,000 for that year. As a condition to denial of a new trial the court required that $1,000 of the amount be remitted. Plaintiff complied with the condition, a new trial was denied, and judgment was entered against defendants for $4,000.

In the second and third causes of action plaintiff claimed damages for partial loss of use of the pasture in the years 1928 and 1929.

Plaintiff recovered, and the judgment, so far as it relates to those causes of action, is not contested.

The action was commenced on July 6, 1929. The two-year statute of limitations was interposed as a defense to the first cause of action, and of course plaintiff could not recover for any cause of action which accrued previous to July 6, 1927. Plaintiff's pasture would accommodate 700 head of cattle. Pastures are rented within a period beginning in February and extending to May of each year, and the rent is a unit rent per head for the entire season. In 1927 the rent was $9 per head, which netted pasture owners $7.50 per head. In 1927 plaintiff was unable to rent his pasture within the time pastures are rented, and his cause of action for damages resulting from that fact necessarily accrued before July 6. If because of the continuing injury plaintiff continued to lose opportunities to rent his pasture, and lost such an opportunity after July 6, he could recover whatever damages he suffered on account of such injury. Plaintiff contends there was evidence he did suffer damages accruing after July 6. The court is unable to find the evidence in the record. All the evidence referred to by plaintiff as sustaining his contention follows.

There was evidence of a demand for pastures in the spring of 1927, and plaintiff's pasture was the only one in the Fall river region not occupied in 1927. The grazing season is from about April 20 to about October 20. Anderson, a witness for defendants, testified as follows:

"Q. Mr. Anderson, would you rent a pasture for the grazing season, if you were going to have to take the cattle off before the 6th day of July? A. I don't think I would, no. I wouldn't give as much for it for the middle season. We often begin shipping in our country if we are going to winter cattle, we call them in the middle of the summer. In that case it wouldn't make any difference. They pay the full pasture bill, no matter when they ship them, when they do go to market."

Claycomb, a witness for defendants, testified as follows:

"Q. You may state whether or not, if one doesn't get his cattle in in May, he is apt to pay a little more if he doesn't get them in in April in the opening of the pastures. A. I would think so.

"Q. When you say late in the season, when they put the cattle in the latter part of April or May they have to pay more? A. The latter part of April.

"Q. Where they didn't make the contract earlier? A. Yes, that is right."

Anderson also testified as follows:

"Q. Are you familiar with the time and custom of leasing pastures, the time when they are leased? A. Mostly in the spring of the year, March, April, and sometimes February.

"Q. How are they leased—for the season, or just from month to month? A. For the season.

"Q. When are cattle run on the first time, ordinarily, in all the years you have been there? A. April—different parts of April, depending on the grass coming on, up to the first of May as a rule.

"Q. If a person hasn't leased his pasture by the first of May, in practically any year, is that pasture off the market for the entire season? A. Not altogether, no; there is sometimes they come in very late.

"Q. Just about what would be the reasonably last in the year that, as a practical proposition, any pasture could be leased any way? A. Cattle do best when they come in our country in April; sometimes they come in later, due to drought in the South; but I would judge nine-tenths of the cattle in our country come from the 15th of April to the 1st of May, in the spring of the year.

"Q. As a practical proposition, state whether or not, if a contract is not made under any circumstances in any year by the first of May, their pasture is out for the year. A. Yes, we have occasionally cattle come in late, in May often."

Anderson was then asked this question: "Then up to the first of June?" The witness did not answer the question, but said: "I would judge the longer you wait, the less chance you would have. The grass would get too big a growth."

Plaintiff testified he had no application for the renting of his pasture in 1927. He solicited Mr. Lampe and Mr. Letson to rent his pasture, and both declined. Mr. Lampe testified for plaintiff that plaintiff approached him in 1927 to rent the pasture, but he would not rent it because the cattle in the pasture the year before did no good; the gain was slight, and there was difficulty in selling them. Mr. Letson, testifying for plaintiff, said he declined to rent the pasture because the cattle in the pasture the year before did no good.

There was no evidence of any drought in the South, or other condition which made plaintiff's pasture rentable after July 6, and there was no evidence that any known cattleman or other person was so situated he would have been led to seek defendant's pasture after July 6.

Plaintiff says it was a fair inference from the testimony that renting could well be after July 6, since the season extended to October.

Plaintiff cannot recover damages for what might well be. He can only recover for what he actually lost, and when he could not rent his pasture within the renting period, opportunity for 1927 was gone.

Plaintiff also contends he could have rented his pasture after July 6 for the full season price. He refers to the testimony of Claycomb, which appears above. Anderson testified to paying full season price when cattle are taken out in the middle of the summer, but not to paying full season price when cattle are put in in the middle of the summer. The result is, there was no evidence to sustain any award of damages, even if there had been liability. There was, however, no liability.

While pollution of the stream so cattle would not thrive if they drank the water was a continuing wrong, it did no harm to plaintiff between the end of the renting period in 1927 and the beginning of the renting period in 1928. If the water of the stream had not been polluted plaintiff could have rented his pasture in the spring of 1927, for the pasture season, at the full season rent. All other pastures were so rented. Nobody would rent his pasture, and as soon as cattlemen had secured their pastures and the renting period had passed, plaintiff had a cause of action for damages for the full value of the lost opportunity. If its aid were invoked in time the law would see to it that the wrongdoers made plaintiff whole, and anything which, by some fortuity, he might later make out of his pasture during the season of 1927, would simply be credited in mitigation of damages. As it was, plaintiff slept on his rights until it was too late.

Plaintiff says the burden rested on defendants to sustain the defense of the statute of limitations. True enough. But the defense was sustained by plaintiff's testimony, and he now seeks to overcome the defense by testimony of defendants' witnesses. The testimony relied on has been quoted.

The judgment of the district court is reversed, and the cause is remanded with direction to sustain the demurrer to plaintiff's evidence and render judgment for defendants on the first cause of action.