No. 18,427.

JAMES MCDANIEL, *Appellee*, v. THE CITY OF CHERRYVALE et al., *Appellants*.

SYLLABUS BY THE COURT.

1. POLLUTION OF STREAM—*Concurrent Wrongdoers—Liability— Joint and Several.* When two or more persons, by their concurrent action, pollute a stream to the injury of another through whose land the stream flows, they are jointly and severally liable for the wrongdoing, and the injured party may, at his option, institute an action and recover against one or all of those contributing to his injury.

2. POLLUTION OF STREAM—*City Sewer—Refuse from Oil Refinery—Limitation of Actions.* A city built a sewer system and discharged sewage into a creek, and about the same time another party built an oil refinery and drained waste water, acids, oils and other impurities into the same stream. The impurities deposited in the stream from these sources polluted the water to some extent at the beginning and injuriously affected an owner's land through which the stream flowed. There was little injury to the land when the rains were abundant and the volume of water in the stream was large, but when the rains diminished and there was little water in the stream the injurious effect of the sewage and impurities cast into the stream was greatly increased. More than two years after the sewer system and refinery were built and in operation the landowner brought an action for permanent damages resulting from the pollution of the stream. *Held,* that as the sewer system and refinery were, in their nature, design and use, permanent structures and their operation was necessarily a constant and continuous injury to the owner's land his cause of action for permanent damages accrued when the sewage and impurities were first deposited in the stream, and not having been brought within two years from that time his action was barred.

Appeal from Montgomery district court; THOMAS J. FLANNELLY, judge. Opinion filed December 6, 1913. Reversed.

*Albert L. Wilson,* of Kansas City, Mo., and *James A. Brady,* of Cherryvale, for the appellants.

*Sullivan Lomax,* of Cherryvale, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action to recover for permanent injuries to the plaintiff's land caused by the pollution of Drum creek which ran through the land. Drum creek, in its natural state, it was alleged, was a stream of good wholesome water, suitable for live stock and also for culinary and domestic purposes, and was used for such purposes by the plaintiff, James McDaniel, until it became polluted. It was alleged that in 1905 the city of Cherryvale constructed a system of sewers through which sewage was discharged into Drum creek, thus polluting the water and rendering plaintiff's home unhealthful and an unfit place in which to live. It was also alleged that in the same year the Uncle Sam Oil Company constructed an oil refinery near the creek and discharged into it waste water, refuse, oils, acids and other impurities, which contributed to pollute the stream. It was further alleged that the defendants concurrently discharged sewage, refuse and filth, and that by the concurrent and chemical action of the impurities the creek was polluted and its usefulness to plaintiff destroyed; that it contaminated his premises and damaged and depreciated the market value of his land to the extent of $6000. It was also averred that because of rains the stream was swollen a great part of the time from the construction of the sewer system and the erection of the refinery until 1909, and that so long as the volume of water was large the impurities thrown by the defendants in the stream did not settle or accumu-

late on his land, but that in 1909 there was a period of dry weather which diminished the flow of the stream, and that the sewage, refuse and other impurities poisoned the stream and made it a cesspool and a nuisance and greatly injured his property. He avers that on December 1, 1909, he presented a claim against the city for the injuries sustained in the sum of $6000 but that the city refused to recognize or pay it. He therefore asked for permanent damages measured by the depreciation in the value of his land, which he fixed at $6000. In answer to special questions the jury found that the defendant city had been continuously discharging sewage into the creek since May, 1905, and that the Uncle Sam Oil Company had been continuously discharging waste water, refuse, oils, acids and other impurities from the refinery into it since July, 1905, that the plaintiff knew and understood from the beginning that these discharges would, to a certain extent, pollute the stream. The jury also found that the market value of the land prior to the injury was $5000 but that after the injury its market value was only $4400, and damages were awarded the plaintiff in the sum of $600.

It is first contended that there was an improper joinder of causes of action against the defendants and that the plaintiff failed to set forth a joint liability against both defendants. The petition charged both defendants with wrongfully polluting the stream and that it was done by their concurrent action. This averment brings the case within the rule which has been applied in this state, that if two or more persons by their concurrent wrongdoing cause injury to a third they are jointly and severally liable and the injured party may, at his option, institute an action and recover against one or all of those contributing to the injury. (*Kansas City v. Slangstrom,* 53 Kan. 431, 36

McDaniel v. City of Cherryvale.

Pac. 706; *Arnold v. Milling Co.*, 86 Kan. 12, 119 Pac. 373; *Luengene v. Power Co.*, 86 Kan. 866, 122 Pac. 1032.)

The principal question presented in this appeal is whether or not the cause of action on which a recovery was had was barred by the statute of limitations. The plaintiff, as we have seen, did not sue for a temporary injury or for any special damage or loss which he had sustained immediately before the bringing of the action, but he treated the injury as a permanent one and as a sort of an appropriation of an interest in his property and asked for all damages already sustained and which he might sustain in the future. He could have elected to have sued for temporary damages sustained within the statutory period preceding the bringing of the action, and for any subsequent injury or loss an additional action might have been brought. He chose, however, to treat the injury as permanent in character and brought a single action to recover for all present and prospective damages to his land. As the sewer system constructed by the city and the refinery constructed by the oil company were permanent in their nature and as the flow of the sewage and refuse from them was designed to continue indefinitely in the future a cause of action for permanent damages arose when the sewage and other impurities were first emptied into the stream. As the effect of the discharge of the sewage and the refuse in the stream could have been ascertained with reasonable certainty and as the stream was polluted to a certain extent when the discharges were thrown into the stream plaintiff could have brought an action for permanent damages at the beginning, and it is settled that "whenever one person may sue another a cause of action has accrued and the statute begins to run." (25 Cyc. 1066.) The plaintiff chose a remedy for permanent injury and is bound by the limitations which

the law places upon the enforcement of such remedy. As was said in *C. B. U. P. Rld. Co. v. Andrews*, 26 Kan. 702:

"The plaintiff has chosen to consider the obstruction of the alley as a permanent injury to his lots, as a *quasi* condemnation and permanent taking and appropriation of a certain interest in his property; and he can therefore recover merely for the consequent depreciation in value of his property by reason of such permanent injury, by reason of such permanent taking and appropriation, by reason of such *quasi* condemnation. He had the privilege to consider the obstruction of the alley as only a temporary injury, and to have sued for any special or temporary damage which might have occurred at any time by reason of the obstruction." (p. 710.)

So here, the plaintiff elected to ask for damages for a permanent injury or an appropriation of a certain interest in his land, and such an action he was entitled to bring when the impurities were thrown into the stream in 1905. In *W. & W. Rld. Co. v. Fechheimer*, 36 Kan. 45, 12 Pac. 362, the railroad company trespassed upon the lands and rights of an owner by building thereon a structure of a permanent character without the consent of the owner or the making of compensation, and it was held that the owner was at liberty to pursue any one of several remedies, and that when the structure was permanent in its nature, as in that case, he might elect to bring an action for a permanent appropriation and injury. In *Hubbard v. Power Co.*, 89 Kan. 446, 131 Pac. 1182, the land of an owner was flooded and injured by the erection of a dam which was permanent in its character, and it was held that the owner who had not been compensated for the injury might, if he saw fit, maintain an action to recover all damages, present and prospective, and that such a cause of action accrued when the appropriation was first made. (See, also, *L. N. & S. Rly. Co. v. Curtan*, 51 Kan. 432, 33 Pac. 297; *Brock v. Francis*, 89 Kan. 463, 131 Pac. 1179.)

McDaniel v. City of Cherryvale.

It is argued that the averment in plaintiff's petition, and certain testimony which tended to sustain it, to the effect that when the rains were abundant and the stream swollen the sewage and impurities discharged into it caused but little injury were sufficient to take the case out of the statute of limitations until 1909, when the lack of rain caused a diminution in the flow of the stream and a more serious injury. Plaintiff argues that the impurities thrown into the stream were greatly diluted by the large volume of water, that he could not sue until he was injured, and that if he had sued when the impurities were first thrown into the creek he could have shown but little, if any, damages. On the other hand, it appears that the plaintiff knew of the character of the sewer system and refinery, and he also knew that there would be a constant and continuous flow of impurities into the stream which would necessarily pollute the water flowing through his premises. He must have known the course of the seasons and that the stream would be higher and lower as the rainfall would vary. It does not appear that there was any change in the character or quantity of sewage and refuse deposited in the creek after 1905. Plaintiff himself testified that the impurities always affected and polluted the water, and also that when the sewer was established and the refinery built his rights were then invaded. He admitted that he knew in 1905 that there were times when the water in the creek did not run, and hence he must have anticipated that the deposits of sewage and filth would not be carried away and that he would necessarily sustain the injury subsequently suffered. Other witnesses of the plaintiff testified that there was some damage resulting from the impurities even when there was a full flow of water in the stream, and that there was a constant damage to the land from this cause from the time the sewer and refinery began to be operated in 1905. The jury specifically found that in 1905 plaintiff knew that the drainage through the sewers and

from the refinery into the creek would pollute the water
to a certain extent so long as the refinery and sewer
system were in operation. If plaintiff had brought a
suit in 1905 he could have recovered for permanent in-
jury to his land, and could have shown without much
difficulty the effect of discharging sewage and refuse of
the quality and quantity which the defendants were
throwing into the creek. He could have shown that at
times there would be a full flow of water in the creek,
and again that there would be no running water in it,
and that the discharges into the creek would necessarily
pollute the water and create a nuisance on his premises.
It would have been no defense to such an action to have
shown that little or no damage would occur when the
rains were heavy and the flow in the stream was strong.
In *Smith v. Sedalia,* 244 Mo. 107, 149 S. W. 597, where
injuries resulting from the construction of a city sewer
were under consideration, it was held that such a sys-
tem must be regarded as a permanent one, and the
fact that the system might thereafter be extended and
the injury enhanced by the increase of sewage did not
affect the permanent character of the injury nor the
right of the plaintiff to recover therefor. The difficulty
in ascertaining the extent of the future use and the
exact amount of the damage which would result did not
deprive the city of the right to condemn nor prevent
the ascertainment of the final permanent damages as of
the time the sewer was built. Here, as we have seen,
the sewer system and refinery are, in their nature, de-
sign and use, permanent structures, the operation of
which will necessarily be injurious to plaintiff's land
and must continue permanently to affect and depreciate
the value of his land. He elected to treat this invasion
of his property rights as a permanent injury and, in
effect, an appropriation of an interest in his land. The
court tried the case upon the theory that a permanent
injury had been sustained, and the jury measured the
damages upon that basis and awarded the plaintiff the

diminished value of his property. The plaintiff had a cause of action for these damages in 1905, when these permanent structures were built and the polluting discharges were turned into the stream. (*Va. Hot Springs Co. v. McCray,* 106 Va. 461, 56 S. E. 216.) The injury to the property was susceptible of ascertainment at that time, and the statute of limitations then began to run on an action for permanent damages. Not having been brought within two years from that time, the action was effectually barred. (*Parker v. City of Atchison,* 58 Kan. 29, 48 Pac. 631.)

It follows that the judgment must be reversed, and the cause remanded with directions to enter judgment in favor of the appellants.