No. 33,910

Mrs. John Waidlick (Waidelich), *Appellant*, v. The City of Manhattan et al., *Appellees*.

(90 P. 2d 1104)

Opinion filed June 10, 1939.

*Marvin O. Brummett, Frank H. McFarland* and *Joe Nickell,* all of Topeka, for the appellant.

*Gerald F. Smith,* city attorney, *Hal E. Harlan* and *A. M. Johnston,* both of Manhattan, for the appellees.

The opinion of the court was delivered by

Hoch, J.: This was an action to recover damages from the city of Manhattan for injuries to plaintiff's property in the flood of 1935. The plaintiff alleged that by the creation of a city dump on the west bank of the Kansas river the main current was deflected from its natural course, with resulting injury to her property on the east bank of the river. The city's demurrer to plaintiff's evidence was sustained, and plaintiff appeals.

The questions presented are whether the plaintiff's evidence established a cause of action against the city, and whether the action, which was begun in June, 1937, was barred by the statute of limitations.

Southeast of Manhattan the Kansas river turns to the north and flows almost due north on the east side of the city. Plaintiff's property consisted of a four-acre tract on the east bank, directly

east of the city. On the west bank, directly across from plaintiff's tract, was city property known as Battery Park. Two or three hundred feet north and downstream from plaintiff's property was a Rock Island railroad bridge which crossed the stream in a northeast-southwest direction, and a little farther north was a highway bridge which crossed almost due east and west. There were four spans in the railroad bridge, and the railroad embankment, which was about seven feet above the normal bank of the river, extended five or six hundred feet east and west from the bridge. Sometime prior to 1917, when the plaintiff moved onto the tract in question, the city had started a dump along the river bank in Battery Park, and this dump was steadily increased in size by the addition of heavy material and debris of all sorts until it took on a permanent character and extended for several hundred feet along the river bank and out into the edge of the stream. Plaintiff lived on the tract across the stream from the dump from 1917 until 1933, when she moved off and rented the place. During the years she lived there she naturally observed such changes as were taking place in the river, and particularly noted the effect of the city dump upon the course of the river. She and others testified that in 1917 the main current flowed along the west bank, but that gradually and steadily as the dump grew larger and reached out farther into the stream the current was thrown over towards the east bank. It is this alleged deflection or diversion of the main current and channel which forms the basis of this lawsuit.

The flood of June, 1935, was one of the highest ever recorded on the Kansas river in that vicinity, being comparable only with the flood of 1903. Great damage was done over a wide area. The two bridges were washed out, much of the railroad embankment was washed away and a large part of the business section of the city was under water. The river left its banks many miles above the city and at one time there was a strong current flowing in an eastward direction over the top of the city dump. The river also broke over its south and east banks and for a time at least there was a current coming from the south and running along the highway which skirted the bluff east of the plaintiff's property. Buildings on plaintiff's property were washed away and other damage done. It is admitted that there would have been water everywhere over the property even if there had been no city dump on the west bank, but it is contended that the principal damage was done by the current

and that the current would not have flowed across the property if it had not been deflected by the dump. In the flood of 1903, before the dump existed, some houses were damaged and washed from the tract, but apparently the damage to the tract was not nearly so great as in the 1935 flood.

If plaintiff had a cause of action against the city, when did it arise? She contends that the damage caused prior to 1935 was not substantial or serious enough in character to start the running of the statute of limitations. The alleged wrong which resulted in plaintiff's injury was the diversion of the main current of the river. She testified that it was about 1927 when she noted the effect of the dump upon the main current, and that from that year on as the channel was narrowed by the dump the current was forced more and more to the east side. During periods of high water after 1927 logs and other floating material would be thrown over against and onto her property and deposited there. Other witnesses gave similar testimony as to the shifting of the main current, and the latest date which any witness gave when he noticed that the current had swung over to the east was the year 1931. One witness testified that by 1931 the current was running under the east two spans of the railroad bridge. On cross-examination the plaintiff testified that after 1927 as the current was changed to the east bank it cut away her land "a foot or so each year." The threat of floods was known to the plaintiff and all others in the vicinity and the existence of the dump and whatever effect upon the river it had was recognized for a period of at least eight or ten years prior to the beginning of this action. In 1931 the plaintiff and other property owners along the river made formal complaint to city officials about the dump and its effect upon the current, and also took the matter up with the State Division of Water Conservation and Flood Control. But, plaintiff alleges, nothing was done about it.

The wrong complained of being deflection of the current, it is clear from the record that the cause of action arose more than two years prior to commencement of this action. The changing of the current and the menace which the change created were apparent certainly as early as 1931, and the record does not support appellant's contention that there was no "substantial" damage prior to June, 1935.

Appellant asks the court to interpret and apply the term "substantial" in a way different from what she believes was done in the case of *Seglem v. Skelly Oil Co.*, 145 Kan. 216, 65 P. 2d 553. No dis-

cussion of terminology is required in view of the conclusions already stated. Plaintiff's evidence tended to establish an actionable wrong long before the flood of 1935, both in actual physical damage to the property and in the menace which she affirmatively recognized in 1931 and prior thereto. She seeks to distinguish the instant case from the case of *McMullen v. Jennings,* 141 Kan. 420, 41 P. 2d 753, on the ground that the structures complained of in the latter case were in the nature of "nuisance per se," while in the instant case the city dump "was perfectly innocuous in all seasons of normal or low water" and therefore not a "nuisance per se." In *McMullen v. Jennings,* plaintiff complained of the dust, the odors, the noise, the vibration caused by grain elevators, and while there was some evidence and contention that the annoyances and injuries, if any, increased as new structures were added or old ones enlarged, the court held that the basis for claim of permanent damage had existed over a period sufficient to bar the action. While the two cases may not be "on all fours" they are by no means entirely dissimilar. The plaintiff here alleged the narrowing of the channel by the creation of the dump, thereby "creating and constituting a flood menace *to the injury* of this said plaintiff." She made that menace a subject of formal complaint as early as 1931. While the dump might not be a nuisance per se, its eventual effect constituted it a nuisance in the view of the plaintiff long prior to the flood of 1935. It is well settled that even though a structure may be entirely lawful when made or erected, it may become a nuisance by reason of the surrounding circumstances and the result which it produces; and that in such event its lawful origin does not justify its continuance. (46 C. J. 658, 659.) And whether the dump be treated as a "nuisance" or in its effect as a "trespass" we come out at the same place as far as the infringement of plaintiff's rights is concerned. It must be noted that in the instant case the plaintiff sought not only damages for what might be called immediate losses, but also for permanent injury to the land.

In *Seglem v. Skelly Oil Co.,* supra, the wrong complained of was pollution of a stream by permitting the escape into it of salt water, oil and other refuse from an oil field. It was held that although in seasons of plenty of rainfall the discharge of the harmful materials did little damage, the statute of limitations began to run when the pollution began and that the invasion of the rights of the farm owner and the menace created constituted "substantial" injury to the plaintiff. In the instant case we have not only the menace long

continued but the wearing away of plaintiff's land and other direct material injury over a period of years.

While it may be impossible entirely to harmonize the Kansas cases on the question of the extent of damage that must be shown to give rise to a cause of action and start the running of the statute of limitations, we find no case holding that the occurrence of actual damage, substantial in character, as a result of the wrong complained of, does not start the running of the statute. In the case of *Buss v. Missouri Pac. Rld. Co.*, 120 Kan. 689, 244 Pac. 1059, which involved damage resulting from overflow of a natural watercourse, the trial court had sustained a demurrer to the cause of action based on damage to the land itself, and while this court held that as to the crops, the cause of action arose when the actual trespass of the overflow waters took place, it commented favorably on the sustaining of the demurrer as to permanent injury to the land, saying that the "cause of action arose when the obstruction was built." The case of *Gardenshire v. Sinclair-Prairie Oil Co.*, 141 Kan. 865, 44 P. 2d 280, is not inconsistent with the present holding. In that case, relating to pollution of a stream by discharge of salt water from an oil field, the court held that the cause of action did not arise until actual damage occurred, but there had been no real menace prior to the actual damage. The opinion states "these wells were some distance from plaintiff's land and it was a problem when, if ever, the salt water would reach their property. And after passing through the intervening territory in quantities sufficient to injure the plaintiffs, there was a question of the extent of the damage that would be sustained; it might only be speculative and conjectural." (p. 869.) In *Fulmer v. Skelly Oil Co.*, 143 Kan. 55, 53 P. 2d 825, it was held that the cause of action for permanent damages to real estate arose when the first substantial pollution of the fresh-water stream took place and not when drought or low water increased the seriousness of the pollution. The opinion cites and discusses other supporting Kansas cases. Among the decisions of this court in support of the view that action in this case was barred may be cited *Taylor v. Newman*, 91 Kan. 864, 139 Pac. 369; *McMullen v. Jennings*, supra; *Seglem v. Skelly Oil Co.*, supra; *McDaniel v. City of Cherryvale*, 91 Kan. 40, 136 Pac. 899.

Appellant's brief gives consideration solely to the question of the statute of limitations. Appellee contends that the demurrer was properly sustained for the additional reason that no cause of action

was established. Perhaps appellant has not presented the full record bearing upon that question. Based on the evidence before us, the demurrer would have to be sustained independent of the statutory bar. While it is admitted that the flood of 1935 would have overflowed plaintiff's land even if the dump had not been in existence, there is nothing to show comparative damage, nor does any evidence appear to establish the amount of the damages or even the measure of damages to be applied covering the injuries and losses alleged.

The judgment is affirmed.

HARVEY, J. (concurring specially): I concur in affirming the ruling of the trial court in sustaining a demurrer to plaintiff's evidence, but prefer to state my reasons as follows: The only damages sought to be recovered by plaintiff in this action were those caused by the floodwaters of 1935. The extent of this flood is summarized in the opinion. On this point, in sustaining the demurrer, the court said:

"Now, obviously, as pointed out, the plaintiff cannot recover for water getting on her land during the flood. Counsel frankly concede that there would have been water all over the land if the city hadn't had a dump. If the city had dug a hole instead of building a dump, there still would have been water on plaintiff's land from this flood."

Plaintiff made no attempt to show to what extent, if at all, the floodwaters were greater on her land, or were more destructive to her property in 1935, because of the fact that defendant maintained a dump on the opposite side of the river. In this respect the case is much like *Cole v. Shell Petroleum Corp.*, 149 Kan. 25, 86 P. 2d 740, where it was held:

"Except where there are joint tort-feasors tort is not legal cause of damage which would have occurred irrespective of tort; rule being that negligence must form what is usually called proximate cause, more accurately called efficient and producing cause." (Syl. ¶ 1.)

It is true plaintiff's evidence was to the effect that beginning several years prior to 1935 the city had dumped material in the river and along the west bank in sufficient quantities to cause the stream of the river, which normally flowed along the west bank, to be diverted to the east bank and against her land, and that this had caused a small quantity of her land to be washed away by the normal rises of the river in each of several years. In this action no damages were sought to be recovered for those losses. While the court, as one of the reasons for sustaining the demurrer, ruled plaintiff's action was barred by the two-year statute of limitations, and

that question has been argued at length in the briefs, it seems to me to be rather an academic question so far as plaintiff's right to recover in this action is concerned. In other words, had all the material of the dump been thrown into the river by the city within thirty days, say, prior to the 1935 flood, the plaintiff, under the evidence in this case, could not have recovered; for, as stated by the court, there was no showing this plaintiff would not have sustained just as much damage in the 1935 flood if the city had made a hole in the river bed.

I do not care to extend the doctrine concurred in by a majority of the court in *Seglem v. Skelly Oil Co.*, 145 Kan. 216, 65 P. 2d 553. In my judgment that doctrine already has been extended too far.

ALLEN, J., joins in the foregoing specially concurring opinion.