No. 40,284

FERNCO, INC., *Appellee,* v. O. Q. KENNEDY and J. T. GILSTRAP d/b/a
K. & G. HYGIENE COMPANY, *Appellants.*

(309 P. 2d 400)

Opinion filed April 6, 1957.

D. *Arthur Walker* and *George W. Stanley*, both of Arkansas City, argued the cause and were on the briefs for the appellants.

*Harry O. Janicke*, of Winfield, argued the cause and *John A. Herlocker* and *W. D. Andreas*, both of Winfield, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: Plaintiff commenced this action to recover money for the contract price of certain hygiene cabinets manufactured, delivered to and accepted by defendants, and damages for breach of the involved contract. The appellate issues presented revolve around the petition which discloses the facts on which plaintiff relies for recovery. Therefore that pleading will be quoted at some length. It reads:

"That during the latter part of 1953 and the early part of 1954, the exact dates being unknown to the plaintiff but well known to the defendants, the defendants, O. Q. Kennedy and J. T. Gilstrap, for and on their own behalf and on behalf of The K & G Hygiene Company, a partnership consisting of O. Q. Kennedy, Mabel R. Kennedy, J. T. Gilstrap, Mrs. J. T. Gilstrap, orally negotiated with the plaintiff for a manufacturing contract to make a device known to all parties as the 'K & G Hygiene Cabinet'.

"That the negotiations were conducted between the defendants and the officers of the plaintiff corporation and culminated in a written contract dated February 27, 1954, a copy of which is attached hereto and made a part hereof as Exhibit 'A'.

"That said contract was signed by the proper officers of the plaintiff corporation on behalf of said plaintiff and by O. Q. Kennedy and J. T. Gilstrap for and on their own behalf and on behalf of and for the benefit of the K & G Hygiene Company, a partnership as above stated.

"That the plaintiff immediately, upon the signing of said contract, began preparation for the performance thereof; that the plaintiff purchased and procured all of the special machinery, tools, dies and equipment necessary to the performance of said contract, purchased special steel, paints and all other items necessary to the manufacture of the K & G Hygiene Cabinets as described in said contract and as amended by specifications thereafter mutually agreed upon and as hereinafter stated; that the defendants conferred with the plaintiff concerning manufacturing processes and specifications and all changes in specifications and processes as amended were ratified and approved by all of said defendants and the plaintiff.

"That the defendants on numerous occasions, both before and after February 27, 1954, the exact dates being unknown to the plaintiff but well known to

the defendants, orally advised the plaintiff that they had orders for said K & G Hygiene Cabinets in numbers of from 10,000 to 50,000 units and that it was necessary for plaintiff to secure an ample supply of materials to meet said order; that the defendants did, as provided by said contract, in April of 1954 order and direct said plaintiff to commence manufacture of the minimum amount of Type 1 and Type 2 Cabinets, being 5,000 and 2,000 respectively.

"That the plaintiff, in accordance with the terms of said contract and specifications as revised by oral agreement between the parties and ratified by the conduct of said parties, began manufacture of the K & G Hygiene Cabinets and invoiced and made deliveries to the defendants, which deliveries were accepted by said defendants, all as shown upon the schedule of invoices and deliveries as noted and listed upon Exhibit 'B' attached hereto and made a part hereof.

"That a total of One Thousand Sixty-two (1,062) Type 1 (54-A) Cabinets at Three and 60/100 Dollars ($3.60) each were manufactured, delivered to and accepted by the defendants; and a total of Five Hundred Fifteen (515) Type 2 (54) Cabinets at Three and 80.100 Dollars ($3.80) each were manufactured, delivered to and accepted by the defendants but that said defendants failed, refused and neglected to make payment therefor according to the terms of said contract and thereby became indebted to said plaintiff in the sum of Five Thousand, Seven Hundred Eighty-two and 64/100 Dollars ($5,782.64)."

Further allegations of the petition have to do with plaintiff's claims respecting a breach of the contract and damages sustained by reason thereof and are of little consequence to the issues raised by the appeal, so such allegations, together with the prayer of the petition, will be omitted.

The contract, attached to the petition was identified as Exhibit "A," is lengthy and requires little attention. However, it is to be noted it contains numerous specifications applicable to various types of cabinets contemplated under its terms and that portions of the agreement relating to "delivery, acceptance and price" reads:

"The Buyer shall have the right within ten (10) days from the date of each delivery to reject such of the cabinets as are not in conformity with the specifications or are defective and after the expiration of such ten (10) days Buyer shall be deemed to have accepted all of said cabinets except such as shall have been rejected. The Manufacturer shall replace such of the cabinets as may be rejected with others made in conformity with the said specifications within ten (10) days from the date of rejection.

"The minimum Ten Thousand (10,000) units herein agreed upon shall be accepted and paid for by the Buyer within six (6) months from the date of this Agreement and all units not specifically ordered within this period may be invoiced to the Buyer for payment as hereinafter provided."

And another portion relating to "payment" reads:

"All payments for deliveries made shall be thirty days net cash, with two per cent discount ten days from date of invoice."

It should be further noted that the schedule of invoices and deliveries, identified in the petition as Exhibit "B," shows delivery to defendants of 1577 cabinets, between May 29, 1954, and July 8, 1954, at invoice prices totaling the amount claimed by plaintiff in the petition, which was filed on April 21, 1955, under allegations charging that although such cabinets had been delivered to and accepted by defendants on the dates indicated in such exhibit the defendants had failed, refused and neglected to make payment therefor in accord with the terms of the contract.

At this point, in order to avoid confusion respecting the parties defendant, it should be stated the abstract contains a statement to the effect a demurrer of defendant Mabel R. Kennedy to the petition was sustained for the reason the pleadings showed that she had never been a party to the contract. We are not advised as to how Mrs. J. T. Gilstrap got out of the case. However, since the abstract, obviously referring to the ruling on such demurrer, contains a further statement that the action now proceeds against O. Q. Kennedy, J. T. Gilstrap and K. & G. Hygiene Company, a partnership composed of O. Q. Kennedy and J. T. Gilstrap, subsequent reference to the defendants will be so limited.

Subsequent to the ruling above mentioned, the defendants filed a motion to make plaintiff's petition more definite and certain and to strike certain of its allegations. Portions of this motion were sustained. Others, not here involved, were overruled. Thereafter, and in conformance with the ruling on such motion, plaintiff filed an amendment to the petition which reads:

"COMES Now the plaintiff and in compliance with the order of the court made on November 4, 1955, makes its petition more definite and certain by stating that the mutual agreement as to the amended specifications and promises was made orally and the cabinets as made according to said oral amended specifications were received and accepted by the defendants; that no changes as made were approved by any written agreements, but orally by the oral agreements and conduct of the parties, and by their further oral ratification and conduct."

Following the foregoing amendment defendants did not renew their attack on the petition, either by motion to make more definite and certain or to strike. Nor did they complain such amendment failed to comply with the trial court's ruling on their previous motion. Instead they filed what, for purposes pertinent to this appeal, may be said to have been a general demurrer based on the ground

the petition, as amended, failed to state facts sufficient to constitute a cause of action. In due time this demurrer was overruled. Thereafter, without leave of court, or at any time requesting permission to do so, they again attacked the petition by a lengthy motion titled "Motion to strike, or in the alternative to make petition and amendment thereto more definite and certain, and to elect." When this motion was called for hearing plaintiff objected to consideration thereof on grounds it should have been filed and presented prior to the demurrer. After an extended argument on this objection the court said "It appears to the Court that this motion is not well taken; and since having overruled the demurrer, that will be the order of the Court, that the motion is not well taken." Further argument ensued, whereupon, in response to counsel for defendants' specific request, for a reason for its action, the court announced that it thought the motion was out of order at the present time, that it should have been filed and taken up at the time of the demurrer; and that for that reason it was refusing to hear such motion. Thereupon counsel for defendants gave notice they were appealing from such ruling, as well as the order overruling the demurrer, and perfected the instant appeal.

The space required to give readers of this opinion a proper understanding of what this case is about makes this appeal appear more formidable than it really is.

Touching appellants' complaint the trial court erred in refusing to hear their second motion to strike or in the alternative to make the petition and amendment thereto more definite and certain, after presentation and determination of their demurrer to the petition as amended, it may be stated that this court has long been committed to the rule that the filing of repeated motions of such character, which might have been embodied in the first motion to make the original petition more definite and certain and to strike, is not favored and that they cannot be filed without leave of court and such leave should rarely be granted.

See, e. g., *Adams v. Lockwood, Englehart & Co.*, 30 Kan. 373, 2 Pac. 626, cited with approval in *Meixell v. Kirkpatrick*, 33 Kan. 282, 297, 6 Pac. 241, and *Zinn v. Hill Lumber & Investment Co.*, 176 Kan. 669, 671, 272 P. 2d 1106, where it is said:

"After a motion has been heard and overruled, the moving party has no right to file a second motion for the same relief upon grounds existing at the time the prior motion was made and decided. It can only be done upon leave of the court, which should rarely be granted." ( Syl. ¶ 1.)

The reason for the rule of the foregoing cases is as old as the law itself. If and when the trial court, in the exercise of sound judicial discretion, believes that the joinder of issues in a lawsuit is being unduly prolonged by the filing of dilatory and frivolous motions it not only has the power but it is its duty to take steps which will avoid that result. This we may add, is particularly true where —as here—the moving parties have theretofore elected to file, and have been unsuccessful in the presentation of, a demurrer. An examination of the motion now under consideration discloses nothing which could not have been raised in appellants' first motion to make the petition more definite and certain and to strike. Moreover, in the light of the record presented, we think it is clear the time had come for the court to insist upon the joinder of issues. Under such circumstances we do not believe the trial court abused its discretion in refusing to give the motion in question consideration or that there is merit in appellants' contention it erred in failing to do so. Indeed to hold otherwise would mean that litigants, not the court, are to determine when motions and other objections to pleadings must come to an end. However, we are not compelled to base our decision on the foregoing question entirely upon its merits.

Another rule of universal application is that motions to strike and make definite and certain rest so much in the sound discretion of the trial court that rulings with respect thereto, which we may add includes a ruling refusing to hear such a motion for the reasons herein involved, are not appealable unless they affect a substantial right and in effect determine the action. See, *e. g.*, *Reed v. Mai*, 171 Kan. 169, 231 P. 2d 227, and *Billups v. American Surety Co.*, 170 Kan. 666, 671, 228 P. 2d 731, and cases there cited. For numerous other decisions of like import see West's Kansas Digest, Pleading, § 353, and Hatcher's Kansas Digest [Rev. Ed.], Pleading, § 44. Having again reviewed the motion, we are unable to find anything therein which could not have been raised by appellants by way of answer. It follows that the ruling refusing to hear and determine such motion did not affect appellant's substantial rights or have the effect of determining the action, hence such ruling was not appealable.

Appellants' second and final contention is that the trial court erred in overruling their demurrer to the amended petition. We are not disposed to here repeat the previously quoted allegations of that pleading. It suffices to say that when taken as true, as they must

be in ruling on a demurrer, we have little difficulty in concluding such allegations are sufficient to state a cause of action against appellants under the contract for the amount claimed for the Hygiene Cabinets, alleged to have been manufactured, delivered to and accepted by appellants under the conditions and circumstances set forth at length in such pleading. Having reached this decision we have no difficulty whatsoever in concluding appellants' position the trial court erred in overruling the demurrer cannot be upheld. The established rule of this jurisdiction is that where a general demurrer challenges the sufficiency of the entire petition to state a cause of action the trial court does not err in overruling such demurrer if a pleading so challenged states a cause of action on any theory. For decisions, where this rule has been considered, discussed and applied, see *Clark v. Hildreth,* 179 Kan. 243, 247, 293 P. 2d 989; *Edwards v. Solar Oil Corp.,* 177 Kan. 219, 222, 277 P. 2d 614; *Myers v. Fleetwood Farms, Inc.,* 176 Kan. 515, 516, 271 P. 2d 263; *Butler v. Rude,* 162 Kan. 588, 178 P. 2d 261; *Updegraff v. Lucas,* 76 Kan. 456, 93 Pac. 630.

Finally it should be stated that in reaching the conclusion just announced we have disregarded, not overlooked, many contentions advanced by appellants respecting the existence of defensive facts and circumstances which they seek to have considered and reviewed in connection with the ruling on the demurrer. Indeed, we have purposely refrained from mentioning such matters in order to avoid saying anything which might prejudice either of the parties in a trial, after joinder of issues, on the merits of the cause. Whether appellee can sustain the burden of proving the allegations of his petition or appellants establish the defenses with respect thereto, which they have sought to argue in connection with questions pertaining to the propriety of the rulings on the demurrer, are not matters with which we are presently concerned under the limited appellate issues involved. All we are now warranted in holding, as we do, is that under the facts, conditions and circumstances, set forth and described in the amended petition, the trial court did not err in overruling the demurrer to that pleading.

What has been heretofore stated and held requires an affirmance of the judgment.

It is so ordered.