No. 41,927

R. L. Wycoff and R. A. Wycoff, d/b/a Wycoff Brothers, a Partnership, *Appellees,* v. Winona Feed and Grain Company, Inc., a Kansas Corporation, *Appellant.*

(353 P. 2d 979)

Opinion filed July 2, 1960.

*James P. Mize,* of Salina, argued the cause, and *C. L. Clark* and *T. M. Lillard, Jr.,* both of Salina, and *Max Jones* and *Selby S. Soward,* both of Goodland, were with him on the brief for the appellant.

*Edward M. Beougher,* of Grinnell, *Earl Artley,* of Russell Springs, and *J. H. Jenson,* of Oakley, were on the brief for the appellees.

The opinion of the court was delivered by

Schroeder, J.: This is an action to recover damages for failure to deliver barley of the quality which the defendant received from the plaintiffs for delivery to the Commodity Credit Corporation.

The defendant's motions to make definite and certain and to strike allegations of the petition, and its demurrer to the petition, were overruled. The defendant has appealed and specifies such rulings as error.

The only question, under the circumstances, is whether the petition states a cause of action.

The plaintiffs (appellees) are farmers doing business as a partnership and their principal place of business is a farm in the vicinity of Winona, Logan County, Kansas. The defendant (appellant) is a Kansas corporation and its principal place of business is at Winona, Logan County, Kansas.

Sometime prior to the 1959 crop year, plaintiffs produced and stored barley on their farm near Russell Springs, upon which they obtained a Commodity Credit Corporation loan calling for 21,534 bushels of barley grading Number 3.

In 1959 the Commodity Credit Corporation, under its loan agreement with the plaintiffs, became the actual owner of the barley and issued its delivery order directed to the plaintiffs and to the defendant ordering the plaintiffs to deliver the barley to the defendant's warehouse in Winona, Kansas, where it was graded, weighed, inspected, sampled and accepted by the defendant, as it was delivered, as being the barley of the quantity and quality called for in the delivery order. The defendant charged the fee allowed under the public warehouse law, which applies when such public warehouse accepts the responsibility for grade and quantity of the commodity delivered to it.

The defendant then shipped ten cars of barley to the Commodity Credit Corporation at Kansas City, Missouri, to satisfy the obligation under the plaintiffs' loan agreement with the Commodity Credit Corporation. The barley so shipped when graded in Kansas City by the federal grain inspection department was found to be of a grade inferior to Number 3, and the Commodity Credit Corporation charged the plaintiffs for the difference. The plaintiffs made demand upon the defendant for this amount which was refused; consequently this action was brought in the district court of Logan County, Kansas.

It is conceded, under the government's price support program, the Commodity Credit Corporation has a certain "foreclosure or take-over" date, applying to such grain upon which it has made loans to the producer. After the foreclosure date, the Commodity Credit Corporation becomes the actual owner of the grain and may elect to keep the grain in storage, thereafter paying storage thereon, or it may elect then or at any time thereafter to order the grain shipped and delivered to it. If any deterioration in the quality of the grain has occurred between the date the farmer obtained the loan and the date the farmer delivers the grain after foreclosure on Commodity Credit Corporation's order, the farmer is surcharged with the difference, if any, in the loan proceeds which he had theretofore obtained and the market value of the deteriorated grain on delivery to the Commodity Credit Corporation. Such surcharge to the farmer is made directly by the Commodity Credit Corporation after its receipt of delivery of the grain.

The petition, after identifying the parties and alleging the authority of the defendant as a licensed public warehouse for the reception, storage, handling and shipment of grain under the laws

of the State of Kansas and under the laws of the United States and the rules and regulations of the Commodity Credit Corporation, alleges:

"4. That on or about May 22, 1959, the A. S. C. office of Logan County, Kansas, issued its delivery order to the Plaintiffs for the delivery of approximately 21,000 bushels of barley, then under loan to Commodity Credit Corporation, said delivery order specifying delivery to the Winona Feed and Grain Company, Inc., of Winona, Kansas, for handling and shipment by them to Commodity Credit Corporation at Kansas City, Missouri. That under Plaintiffs' loan agreement with Commodity Credit Corporation, they were to deliver to said Commodity Credit Corporation of Kansas City, Missouri, the barley held by them under loan *and this delivery order called for the delivery of Number 3 Barley, containing not over 10% thin barley.* That such delivery order indicated that the same had been inspected by the Logan County, A. S. C. officials and that the same complied with the above grade and was *eligible* for delivery, *all of which facts were well known to the defendant.*

"5. That thereafter, the said *defendant,* by their manager and employees at their Public warehouse at Winona, Kansas, *Tested, sampled and inspected the same, checking each truck load as delivered across their scales, accepting each and every load thereof as barley of the same grade and kind as called for in said delivery order, issued by the Logan County A. S. C. office. That they issued their scale tickets therefor.* That nothing contained in or on said scale tickets indicated that said grain was of inferior quality and that it was not of the same grade and kind as called for in the delivery order.

"6. That said Defendant, received this grain under said delivery order into their Public Warehouse at Winona, Kansas, *and Charged the regular fee set by Commodity Credit Corporation, when a Public Warehouse, receives such grain to be commingled with other grain.* That the terms under which grain is so *handled* and the fee for handling same is required to be posted in the office of such Public Warehouse, by Federal and State Regulations governing such Public Warehouse. Further that it is the usual, regular and well established Custom of the Grain Trade, when grain is received for commingling and in accordance with the regulations of the Commodity Credit Corporation, *that when such grain is received on the basis that it will be commingled and handled in that manner, that it then becomes the obligation of the Public Warehouse receiving this grain to do their own grading, sampling and inspecting at the time said grain is received over the scale.*

"7. That said Defendant caused to be shipped from its Public Warehouse at Winona, Kansas, to Commodity Credit Corporation at Kansas City, Missouri, Ten (10) cars of barley to satisfy the obligation of Plaintiffs under their loan agreement with Commodity Credit Corporation, or a total of 21,675.85 bushels, said loan agreement, however, calling for only 21,534 bushels, such delivery thus consisting of an *overrun* of 141.85 bushels." (Emphasis added.)

The petition then alleges that the Commodity Credit Corporation, upon the delivery to it of the barley from the defendant, inspected, graded and tested the grain which was found to be "sample

grade" and not Number 3 barley, thus being of inferior quality, as a result of which the Commodity Credit Corporation credited plaintiffs at the rate of 66½ cents per bushel. This was 20½ cents per bushel less than plaintiffs were given on the loan (87 cents per bushel), as a result of which the plaintiffs were damaged in the sum of $4,443.54.

The defendant contends the petition contains no direct affirmative allegation of the quality or quantity of barley actually delivered by the plaintiffs to the defendant's grain elevator at Winona, or that the defendant did, after its receipt of the barley, commingle it with any other grain. It is also contended the petition contains no allegation that the defendant did not grade, sample and inspect the grain as it received the same and no allegation that the grading, sampling and inspection which defendant did do was in any wise inaccurate or inadequate. Likewise, it is argued the petition contains no direct affirmative allegation the defendant has refused to advise plaintiffs of the results of defendant's sampling and tests of the grain. A further argument is made that the petition contains no charge at all that this grain went out of condition while in the defendant's possession, or that there was unnecessary delay in shipping the grain.

It is argued the allegations of the petition simply conclude that based on the tests of the federal grain inspection department when the grain reached Kansas City, the Commodity Credit Corporation gave plaintiffs $4,443.54 less credit for the grain than plaintiffs would otherwise have received. It is contended there is no allegation that such test was inaccurate or that such price was improperly determined by Commodity Credit Corporation when the grain reached Kansas City.

Finally, the defendant contends the above conclusion is based entirely upon plaintiffs' alleged conclusion in paragraph 4 as to the import of the delivery order, which is not attached to or made a part of the petition.

We fail to see any merit whatever in the defendant's contentions or argument and hold that the orders of the trial court overruling the motions to make the petition more definite and certain and to strike were well within its discretion.

The petition alleges the defendant exercised the option, and charged the fee allowed, wherein the grain is graded, sampled, weighed and tested by the defendant, *whereby it becomes respon-*

*sible to the producer for the kind and quality as well as the quantity of grain delivered, all as determined by the defendant.* Under this option the defendant becomes responsible to deliver to the Commodity Credit Corporation barley of the same grade, quality and quantity as originally determined by the defendant. Once the defendant *accepts grain as specified in the delivery order under this option,* it becomes the barley of the defendant with the right to commingle it with other barley and be so handled, sold and disposed of by the defendant as it sees fit, so long as it delivers barley in the same quantity and of the quality as called for in the delivery order to the Commodity Credit Corporation at Kansas City. Whether or not the barley delivered to the defendant by the plaintiffs was or was not commingled with other barley, whether or not it went out of condition while in the defendant's possession, and the accuracy of the testing made by the Commodity Credit Corporation, and the price computation are not matters material to the allegations of the petition in this case.

The petition alleges that the defendant received the barley under the delivery order for shipment to the Commodity Credit Corporation, that it accepted this barley as meeting the requirements specified in the delivery order, and that it accepted it with the right to commingle and with the responsibility to see to it that the plaintiffs' obligation to the Commodity Credit Corporation was satisfied by shipping it barley of the same grade and quality, as well as quantity, all as called for in the original delivery order, and it is alleged that in so doing it charged the established fee for such service. The petition alleges the barley shipped to the Commodity Credit Corporation by the defendant did not meet the requirements specified in the delivery order and that the defendant is responsible for the loss to the plaintiffs.

Liberally construed the petition fairly apprises the defendant of what the plaintiffs' claim is. In determining whether a petition is to be given a liberal or a strict construction when attacked by demurrer, the rule is that strict construction applies only when a meritorious motion to make definite and certain has been successfully resisted by the plaintiff. (*Gibbs v. Mikesell,* 183 Kan. 123, 325 P. 2d 359, and cases cited therein.)

A motion to make definite and certain lies only when the pleading attacked is so indefinite and uncertain that the nature of the charge or defense is not apparent. (G. S. 1949, 60-741.) This does not

mean indefinite and uncertain according to the refinements and technicalities of the common law system of pleading. A pleading is sufficient as against a motion, which fairly apprises the adversary of what the claim or defense is. Under this rule the function of the motion is far more restrictive than it was at common law. The motions to make a petition definite and certain and to strike allegations therefrom rest in the sound discretion of the trial court. (*Parrack v. Wittman,* 180 Kan. 193, 302 P. 2d 1005; *Vakas, Administratrix v. Collins,* 185 Kan. 103, 340 P. 2d 99, and cases cited in these opinions.)

Where a motion to make definite and certain has been overruled and a general demurrer is later lodged against the petition, the petition must be considered in its entirety and not merely with respect to some isolated paragraph. (*Cessna v. Coffeyville Racing Association,* 179 Kan. 766, 298 P. 2d 265; and *Clark v. Hildreth,* 179 Kan. 243, 293 P. 2d 989.) And where a general demurrer challenges the sufficiency of the entire petition to state a cause of action the trial court does not err if the pleading so challenged states a cause of action on any theory. (*Fernco, Inc., v. Kennedy,* 181 Kan. 25, 309 P. 2d 400; and *Crabb v. Swindler, Administratrix,* 184 Kan. 501, 337 P. 2d 986.)

It was unnecessary to attach a copy of the delivery order to the petition since it alleged "all of which facts were well known to the defendant," after reciting pertinent portions of the delivery order. Where the only purpose to make a petition definite and certain is to require plaintiff to plead his evidence it should be overruled. (*Scott v. Shewell,* 100 Kan. 466, 164 Pac. 1061; and *Vakas, Administratrix v. Collins,* supra.)

On liberal construction under the foregoing rules the petition, given the benefit of all reasonable inferences upon facts well pleaded, states a cause of action, and the trial court did not err in overruling the demurrer. The petition fairly apprises the defendant of the plaintiffs' claim, and the defendant's substantial rights have not been prejudiced by the trial court's ruling on the defendant's motions and demurrer.

The judgment of the lower court is affirmed.