No. 42,205

DEWEY A. ADAMS and BETTY ADAMS, *Appellants*, v. THE CITY OF ARKANSAS CITY, KANSAS, a Municipal Corporation, *Appellee.*

No. 42,206

TINEY E. ALEXANDER and SARAH EFFIE ALEXANDER, *Appellants*, v. THE CITY OF ARKANSAS CITY, KANSAS, a Municipal Corporation, *Appellee.*

No. 42,207

THOMAS E. BOYLE and CHARLINE M. BOYLE, *Appellants*, v. THE CITY OF ARKANSAS CITY, KANSAS, a Municipal Corporation, *Appellee.*

No. 42,208

PAUL P. BORROR and MAXINE A. BORROR, *Appellants*, v. THE CITY OF ARKANSAS CITY, KANSAS, a Municipal Corporation, *Appellee.*

No. 42,209

MICHAEL MORHAIN, *Appellant*, v. THE CITY OF ARKANSAS CITY, KANSAS, a Municipal Corporation, *Appellee.*

No. 42,210

HARRY N. WINTON and ROBY A. WINTON, *Appellants*, v. THE CITY OF ARKANSAS CITY, KANSAS, a Municipal Corporation, *Appellee.*

(362 P. 2d 829)

Opinion filed June 10, 1961.

*E. Dexter Galloway,* of Hutchinson, argued the cause, and *A. Lewis Oswald* and *William L. Mitchell,* both of Hutchinson, and *Milburn E. Geist,* of Augusta, were with him on the briefs for the appellants.

*George Templar* and *Donald Hickman,* both of Arkansas City, argued the cause, and *George E. Sybrant,* City Attorney, and *William E. Cunningham* and *Kirke W. Dale,* both of Arkansas City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Schroeder, J.: These actions were instituted in the district court of Cowley County, Kansas, to recover damages for injury to plaintiffs' real estate suffered as a result of a sewage treatment plant located in the vicinity of their property and operated by the City of Arkansas City, Kansas.

The cases have been consolidated pursuant to a stipulation that the decision in Case No. 42,205, which has been abstracted and briefed, will control the decision in the other cases.

The trial court sustained a demurrer to the amended petition, with amendments thereto, on the ground that it did not state facts sufficient to constitute a cause of action against the City, and appeal has been duly perfected.

The issue presented on appeal is whether the amended petition, with exhibits attached and incorporated therein, shows on its face that the injury was suffered more than three months prior to the

filing of the appellants' claim with the City, and hence barred by G. S. 1959 Supp., 12-105.

On the 13th day of March, 1959, the plaintiffs (appellants) filed a "Notice of Claim for Proximate Damages to Real Property" with the City of Arkansas City, Kansas. The claim specifically described the appellants' real property where they lived and made their home. The claim alleged that the City failed:

". . . to exercise reasonable and prudent judgment in selecting the present situs for the new sewage treatment plant and ordinary, prudent and reasonable city commissioners would have and should have anticipated odors, gases, fumes and stench would fall upon claimants' real property due to the choice of a site within so close proximity to complainants' dwelling, and, such negligent omission of judgment, and the results thereof, set in motion a chain of events and actions which constitute a nuisance by the city of Arkansas City against the complainants' real property, and resulting in great damage to said real property."

It alleged that the location of the sewage treatment plant was nearer than one thousand feet from some dwellings in Sleeth Addition; that requests for relief or abatement of the nuisance have gone for naught, and that the City has given no positive relief to the complainants.

The claim then alleged:

"5. THAT the city of Arkansas City, Kansas, during the five months last past has owned and negligently operated, and still owns and negligently operates a new and defective sewage treatment plant *and said city has continuously during the past five months wrongfully and negligently discharged and still does discharge from said sewage treatment plant large volumes of noxious and offensive odors, gases, fumes and stench* upon, around, in, and over the real property of complainants *and creating thereby a continuing nuisance against the claimants' real property by said acts, and to the great injury of claimants' property*.

"6. THAT SPECIFICALLY, said odors, gases, fumes and stench were of very high intensity on December 25th, 26th, 27th, and 28th and continued to remain so for several days from said dates and said stench during this particular period did great damage to the real property of said claimants. As a result of the very offensive stench during this particular period, a large and irritant group of citizens from the affected area met on December 29, 1958, at the City Hall with City Officials and protested long and vehemently against said odors and stench being around, on, in, and above their real property and they requested complete and immediate relief therefrom or legal action would be forthcoming for damages to their property.

"7. *That said nuisance is continuous and constantly recurring and has inflicted an irreparable injury on the real value and market value of real estate in Sleeth and Mill Additions,* and, the building of said sewage treatment plant in or adjacent to Sleeth Addition has given this area the bad reputation of

being an undesirable place or area in which to reside because of the sewage treatment plant and the stench therefrom, and, the value and sale of realty in Sleeth and Mill Additions have depreciated greatly, and, claimants' real property has been particularly damaged and has been substantially and permanently depreciated in value.

"8. THAT the complainants have suffered and still suffer special and peculiar injury resulting from said wrongful acts by the city of Arkansas City in its operation of said sewage treatment plant in that the air surrounding the complainants' dwelling has been and is polluted, unhealthful and unfit to live in, and destroying the dwelling's use as a residence for the complainants and complainants' family, and greatly depreciating its value, salability, rentability, and the opportunities to sell have been greatly reduced and are almost nil, to the complainants' damage of Four thousand one hundred sixty six dollars ($4166.00), and said amount of damage is a direct result of the nuisance created and operated by the city of Arkansas City.

"9. THAT said actions, supra, by the city of Arkansas City, constitute a private nuisance against the complainants and complainants' property, and constitute a public nuisance against all property owners and their properties, who reside in Sleeth and Mill Additions to Arkansas City." (Emphasis added.)

The concluding paragraph of the appellants' claim demanded payment from the City "for real property damages already suffered" in the sum of $4,166.

More than thirty days after the notice of claim was filed with the City, no settlement having been made concerning the matter, suit was filed by the appellants seeking damages.

The amended petition, after the usual preliminary allegations concerning the parties and specifically describing the involved real property, alleged:

"3. That the Defendant has constructed and now operates a sewage disposal plant, located in Sleeth Addition to the City of Arkansas City, Kansas, 1186 feet east southeast of the real estate of these Plaintiffs, which sewage disposal plant was placed in operation by the Defendant in the month of November, 1958.

"4. That on or about the 25th day of December, 1958, and at all times since said date, the Defendant, by its operation of said sewage disposal plant, has wrongfully allowed the discharge of foul, noxious, disagreeable and sickening odors, gases, fumes and stench to pass from said sewage disposal plant over and onto the real estate of the Plaintiffs herein, which has permeated through the house of the Plaintiffs, thereby creating a continuing and permanent nuisance against the real property of the Plaintiffs.

"5. That these Plaintiffs have a right to the uninterrupted, quiet, peaceful enjoyment of their home, and to have the same free from the contamination emitted into the air by this Defendant, its officers and employees.

"6. That since the construction and operation of said sewage disposal plant and the resulting discharge and emission of foul, noxious, disagreeable and sickening odors, gases, fumes and stench over, onto and into the premises and

real estate of the Plaintiffs herein, and as a direct and proximate result, and caused solely by the nuisance above complained of, the real estate of the Plaintiffs has become an undesirable location in which to live, reside and raise a family; that this nuisance has rendered the premises unfit for normal living purposes, and the premises have thereby been permanently reduced and depreciated in value, all to the damage of the rights of the Plaintiffs herein to have the value of their real estate unaffected by the acts of nuisance by third parties, and particularly this Defendant.

"7. That on the thirteenth (13th) day of March, and within three months from the first event complained of herein, these Plaintiffs served upon the Clerk of the Defendant city a claim in writing, duly verified, in accordance with the Statutes of the State of Kansas made and provided, setting out their claim; that the Defendant has neglected and refused to allow or reject said claim, and still refuses to do so, and that more than thirty (30) days have passed since the filing of said claim.

"8. That as a result of the things complained of above, these Plaintiffs have suffered damage in that the fair market value of their real estate has been permanently reduced and depreciated in the sum of $4,166.00; *that immediately prior to November, 1958, the real estate of these Plaintiffs was worth the sum of $6,250.00; that it continued to be worth the sum of $6,250.00 until about the 15th of December, 1958, at which time it started to reduce and depreciate in value as complained of above; that on the 13th day of March, 1959, the date of filing the claim for damage with the Defendant, the damage complained of above was measured, computed and calculated to be $4,166.00."* (Emphasis added.)

By reason of the foregoing allegations the plaintiffs sought judgment in the amount of $4,166 "for permanent damages to their real estate" and for costs and other relief.

By amendment to the amended petition the "Claim" and "Acknowledgment" were attached to the petition and made a part thereof.

The trial court in sustaining a demurrer to the amended petition filed a memorandum opinion in which it observed that the original petition had been based, as was the claim, upon allegations of negligence in the operation of the sewage disposal plant, and that following a motion to make definite and certain the plaintiffs abandoned such claim, but proceeded and were "now proceeding upon a pleading alleging a permanent nuisance." The trial court said:

"The petitions do not now seek to enjoin or to abate a nuisance; neither do they seek or claim that temporary damages have been sustained by the plaintiffs. The sole and only basis laid in the present pleadings for any relief is that which may be given by way of permanent damages to the real estate."

Thereupon the trial court construed the claim as alleging that the injury complained of first occurred five months prior to the filing

of notice of claim with the City, and held that the plaintiffs failed to make a timely compliance with the statute in question and could, therefore, not maintain the action, since the filing of a statement within three months was applicable to actions for permanent damages to real estate.

In the construction of a petition for the purpose of determining its effect, allegations are to be liberally construed with a view to substantial justice between the parties. (G. S. 1949, 60-736.) The general rule is that as against a demurrer the petition of the plaintiff is entitled not only to the benefit of the facts pleaded, which must be taken as true, but to all reasonable inferences that may be derived therefrom. (*Cassity v. Brady,* 182 Kan. 381, 321 P. 2d 171, and authorities cited therein.) In construing the sufficiency of any pleading all of the allegations thereof are to be considered together, and it is not proper to segregate allegations and determine their sufficiency without regard to the context of the whole pleading. (*Fyne v. Emmett,* 171 Kan. 383, 233 P. 2d 496; *Emrie v. Tice,* 174 Kan. 739, 258 P. 2d 332; and *Kitchen v. Smith,* 184 Kan. 188, 334 P. 2d 413.) The effect of a pleading is not necessarily determined by the technical definition of a single word. Words used in a pleading must be construed with reference to the context. A construction which will give effect to all the material allegations of a pleading is to be preferred where reasonably possible. Therefore, where a general demurrer challenges the sufficiency of the entire petition to state a cause of action, it is not the function of the appellate court to single out or isolate allegations which support a ruling of a trial court sustaining the demurrer, but to construe the pleading as a whole to see whether sufficient facts have been alleged to state a cause of action on any theory. (*Fernco, Inc., v. Kennedy,* 181 Kan. 25, 309 P. 2d 400; *Richey v. Darling,* 183 Kan. 642, 331 P. 2d 281; *Kansas Bankers Surety Co. v. Ford County State Bank,* 184 Kan. 529, 338 P. 2d 309, 75 A. L. R. 2d 600; *Dugger v. State Highway Commission,* 185 Kan. 317, 342 P. 2d 186; *Otto v. Swartz,* 186 Kan. 689, 352 P. 2d 12; and *Wycoff v. Winona Feed & Grain Co.,* 187 Kan. 98, 353 P. 2d 979.)

Under recent decisions and upon the record presented herein, the amended petition is entitled to a liberal construction. (*Hickert v. Wright,* 182 Kan. 100, 319 P. 2d 152; *Gibbs v. Mikesell,* 183 Kan. 123, 325 P. 2d 359; and *Wycoff v. Winona Feed & Grain Co.,* supra.)

The section of the statute applicable to a decision herein is G. S. 1959 Supp., 12-105. It provides in part as follows:

"No action shall be maintained by any person or corporation against any city on account of injury to person or property unless the person or corporation injured shall within three (3) months thereafter and prior to the bringing of the suit file with the city clerk a written statement, giving the time and place of the happening of the accident or injury received and the circumstances relating thereto: . . ."

In actions of this nature the appellants are bound by the statutory claim which they are required to file with the city clerk pursuant to 12-105, *supra*, as a condition precedent to the maintenance of any action against a municipality, and their rights of recovery are based upon such claim. (*Watkins v. City of El Dorado*, 183 Kan. 363, 327 P. 2d 877; and *Hibbs v. City of Wichita*, 176 Kan. 529, 271 P. 2d 791.) Moreover, to maintain such an action it is incumbent to affirmatively allege in the petition compliance with such condition to state a cause of action. (*McGinnis v. City of Wichita*, 180 Kan. 608, 306 P. 2d 127.) Here the appellants incorporated the claim in their amended petition by reference, and since it is controlling, the amended petition cannot vary the statements made in their claim. (*Watkins v. City of El Dorado*, supra.)

Therefore, in analyzing the amended petition we must determine whether the appellants' claim complies substantially with the statute, 12-105, *supra*. Although the cases hold it is mandatory to comply with the statute requiring that a statement be filed with the clerk of the city as a condition precedent to the maintenance of an action, if the statement filed reasonably complies with the statute and the City is not misled to its prejudice regarding the essential requirements, it has been held sufficient and the City has no reason to complain. (*Jeakins v. City of El Dorado*, 143 Kan. 206, 53 P. 2d 798; and *Watkins v. City of El Dorado*, supra.)

We think it clear the claim conforms with all statutory requirements regarding *the place* of injury without further dwelling upon this point.

The appellee contends the theory of the action proceeds clearly and solely upon the pleading of a *permanent* nuisance resulting in *permanent damages* to real estate. The appellee relies upon the rule that an action for the recovery of permanent damages to land accrues when the injury first occurs. (*Jeakins v. City of El Dorado*, supra; *McDaniel v. City of Cherryvale*, 91 Kan. 40, 136 Pac. 899;

and *Lackey v. Prairie Oil & Gas Co.*, 132 Kan. 754, 297 Pac. 679; see, also, *Peterson v. Texas Co.*, 163 Kan. 671, 186 P. 2d 259, and cases cited therein.) It is then argued the amended petition in the instant case alleges the City started operation of the sewage disposal plant in November, 1958, and the claim alleges continuous operation of the plant "during the past five months;" therefore, the appellants have failed to comply with the express mandate of the statute, 12-105, *supra*, to file their claim within three months of the happening of the injury. In substance, this is to say the three-month condition in the statute is equivalent to a statute of limitations where permanent damages to real estate are sought.

It must be conceded the general rule applied in Kansas is that an action for recovery of permanent damages to land accrues when the injury first occurs. It is significant to note, however, in cases on this point the time when an injury first occurs becomes material only with reference to the running of the *two-year* statute of limitations pursuant to G. S. 1949, 60-306, *Third*. In addition to the cases heretofore cited others are illustrative. (*Taylor v. Newman*, 91 Kan. 864, 139 Pac. 369; *Beard v. Kansas City*, 96 Kan. 102, 150 Pac. 540; *Campbell v. City of Wichita*, 101 Kan. 817, 168 Pac. 833; *McMullen v. Jennings*, 141 Kan. 420, 41 P. 2d 753; *Fulmer v. Skelly Oil Co.*, 143 Kan. 55, 53 P. 2d 825; *Seglem v. Skelly Oil Co.*, 145 Kan. 216, 65 P. 2d 553; *Waidlick v. City of Manhattan*, 150 Kan. 34, 90 P. 2d 1104; and *Eyman v. National Union Oil & Gas Co.*, 153 Kan. 45, 109 P. 2d 477. But see, *Gardenhire v. Sinclair-Prairie Oil Co.*, 141 Kan. 865, 44 P. 2d 280.)

It is apparent from the wording of 12-105, *supra*, the legislature did not have injury caused by a nuisance specifically in mind. Our decisions, however, have construed the statute as applicable to injury caused by a nuisance. This is exemplified by cases concerning the time of an alleged injury. Where claim is made against a city for certain types of injury, strictness in alleging the time has always been essential. Thus, in *McHenry v. Kansas City*, 101 Kan. 180, 165 Pac. 664, the claim recited injuries were sustained by a fall on a public sidewalk "on or about January 12, 1916," and the petition alleged the time to be January 19, 1916. The variance was held to be fatal. In *Mowery v. Kansas City*, 115 Kan. 61, 222 Pac. 126, the claim showed the date of injury to be January 18th, whereas the petition alleged and the evidence tended to show the injuries complained of were received on January 3rd. The

court held a demurrer to the evidence was properly sustained. In *Ray v. City of Wichita,* 138 Kan. 686, 27 P. 2d 288, a claim filed one day late was held to be fatal. However, where the injury sustained was caused by a continuing nuisance, a claim which alleged that it covered the three months immediately previous to the date of filing the claim was held sufficient in *Watkins v. City of El Dorado,* supra. (See, also, *Jeakins v. City of El Dorado,* supra; and *Steifer v. City of Kansas City,* 175 Kan. 794, 267 P. 2d 474.)

The appellee attempts to make a methodical classification of our nuisance cases on the basis of whether the damages sought for the injury are temporary or permanent in character. Before embarking upon further discussion, it would be well to quote a passage from an extensive annotation entitled "Nuisance—Sewage Disposal Plant" in 40 A. L. R. 2d 1179. This passage is not quoted for adoption as a statement of Kansas law, nor does it necessarily represent Kansas law, but will serve to enlighten further discussion of our Kansas cases. It is set forth under the subhead "Damages to land as affected by permanence of nuisance" (40 A. L. R. 2d 1200 [§ 11]), and reads:

"The importance of determining whether a nuisance created by the operation of a sewage disposal plant is a temporary or permanent one is illllustrated by the different measure of damages in either instance. A temporary nuisance is one which is abatable, while a permanent nuisance is one which, despite lack of negligence in the construction or operation of the plant, may be expected to continue. To be permanent, it would seem necessary that it appear that there exists a legal right to maintain the sewage disposal plant although its operation must necessarily result in a nuisance. The damages in such case would appear measurable for all time, and would have reference, when applied to realty, to the actual damage caused to the value of the property; in other words, where the injury to real property caused by the nuisance is of a permanent character, the damages are measured by the depreciation in the market value of the property injured, taking into consideration, however, that recovery is not limited solely to the damages to the property, but that special damages arising from annoyance, discomfort, or inconvenience to the person may also be recovered. Where, on the other hand, the nuisance is temporary and can be abated, only temporary damages to so-called 'rental value' can be recovered, leaving the door open for further suits if further damage occurs."

Sewage disposal in a city has been recognized as a serious problem in Kansas. In *State v. Concordia,* 78 Kan. 250, 96 Pac. 487, the court speaking through Justice Burch said:

". . . It may be practically impossible to devise a system adequate to the needs of the city or within its ability to carry out which will not occasion inconvenience and discomfort to somebody. The mayor and council must meet the situation as best they can. When their candid judgment has been deliberately exercised and the work has been properly planned and skilfully executed the rights of individuals must ordinarily be subordinated, so far as all incidental disadvantages and loss is concerned. The city is, however, liable for negligence in the plan, construction and maintenance of sewers, as of other public works, *and the right to build sewers and drains implies no right to create a nuisance, public or private.* . ." (pp. 252, 253.) (Emphasis added.)

The foregoing case and authorities cited therein recognize that even though a municipality has power to construct and maintain a sewage disposal system, and although the work is one of great public benefit and necessity, nevertheless such public body is not justified in exercising its power in such a manner as to create a private nuisance by a disposal of its sewage without making compensation for the injury inflicted, or being responsible in damages therefor, or liable to equitable restraint in a proper case, nor can such public body exercise its powers in such a manner as to create a public nuisance, for the grant presumes a lawful exercise of the power conferred and the authority to create a nuisance will not be inferred.

While it is the general rule in this state that a city is not liable for negligent acts of its officers or employees when acting in the performance of governmental functions, absent a statute expressly imposing liability, an exception is recognized where the city's conduct results in creating or maintaining a nuisance. (*Jeakins v. City of El Dorado,* supra; and *Steifer v. City of Kansas City,* supra.)

The gravamen of the offense in actions of this nature is not necessarily negligence but nuisance, and is dealt with by the law of nuisance, whether the nuisance is negligently caused or otherwise. It cannot be said that a sewage disposal plant is a nuisance at all times and under any circumstances, regardless of location or surroundings. Thus, it is not a nuisance *per se* under the generally accepted definition of such term. A sewage disposal plant may be so constructed, maintained or operated that, through the emission of noxious or disagreeable odors, or through the discharge of improperly digested sewage upon land or into a watercourse, it becomes a nuisance in fact or *per accidens.* (See, 40 A. L. R. 2d 1206 [§ 13].)

The appellee relies upon *McDaniel v. City of Cherryvale,* supra, where an action for *permanent damages to land* (depreciation in market value) was brought by the plaintiff. There the city con-

structed a sewer which together with a refinery discharged sewage and refuse into a creek flowing through the plaintiff's land. The court held the action was barred by the two-year statute of limitations because more than two years had expired from the time the pollution was discharged and turned into the stream. In the opinion it was said the plaintiff could have elected to sue for temporary damages sustained within the statutory period preceding the bringing of the action, and for any subsequent injury or loss an additional action might have been brought. He chose, however, to treat the injury as permanent in character and brought a single action to recover for all present and prospective damages to his land. In the opinion it was said:

". . . As the sewer system constructed by the city and the refinery constructed by the oil company were permanent in their nature and as the flow of the sewage and refuse from them was designed to continue indefinitely in the future a cause of action for permanent damages arose when the sewage and other impurities were first emptied into the stream . . ." (p. 43.)

It is important to note in the above case the stream into which the pollution was discharged ran through the plaintiff's land. This is in the nature of a trespass, and the court, speaking of the permanent structures, recognized that their operation would necessarily be injurious to the plaintiff's land and would continue permanently to affect and depreciate the value of his land. The plaintiff having elected to treat this *invasion of his property rights* as a permanent injury was said by the court to be, in effect, treating it as *an appropriation of an interest in his land.* Similarly, in *Campbell v. City of Wichita,* 101 Kan. 817, 168 Pac. 833, the City of Wichita closed a street by ordinance, and it was held the notice of closing the street constituted an appropriation of ingress and egress which gave rise to a *cause of action for permanent appropriation.* Under these circumstances an action for permanent damages accrues when the *appropriation* has its inception.

The question as to when a cause of action accrues and whether the nuisance complained of is permanent or recurring has resulted in a diversity of conclusions. This was recognized in *McMullen v. Jennings,* 141 Kan. 420, 41 P. 2d 753, where many of the cases were distinguished in the following language:

"It is generally held the first right of action for injuries caused by a nuisance or a continuing tort arises when the first injury in inflicted. Although in many particulars the same principles apply to trespass and nuisance, there is this difference: in trespass the mere breaking and entering gives rise to a cause of

action; *in nuisance, the plaintiff is not disturbed in the enjoyment of his property until the act of the defendants has resulted in some injury.* If the action be in trespass there is but one cause of action; if in nuisance it becomes important to determine whether the facts warrant but one action or a succession of actions as the various injuries may be inflicted . . ." (p. 42.) (Emphasis added.)

There are cases in which the original act is considered as a continuing act, daily giving rise to a new cause of action. Where one creates a nuisance and permits it to remain, it is treated as a continuing wrong, giving rise, over and over again, to causes of action so long as it remains. But the principle upon which one is charged as a continuing wrongdoer is that he has a legal right and is under a legal duty to terminate the cause of the injury. The foregoing was recognized in *Henderson v. Talbott*, 175 Kan. 615, 266 P. 2d 273, by quoting from *K. P. Rly. Co. v. Mihlman*, 17 Kan. 224. The rule was summarily stated in *Watkins v. City of El Dorado*, supra, and applied in *Steifer v. City of Kansas City*, supra.

Turning now to the claim filed with the City in the instant case and applying the rules of construction heretofore stated, we think the facts set forth allege a nuisance which is continuous and constantly recurring—a nuisance which the City would be under legal obligation to abate. The italicized portions of the claim, heretofore quoted, in addition to other facts alleged, tend to substantiate this construction.

Fairly construed, both the claim and the amended petition filed pursuant thereto seek "permanent damages" to the appellants' real property. In paragraph 7 of the claim it is said "claimants' real property has been particularly damaged and has been substantially and permanently depreciated in value." The petition in several places indicates that it is the depreciation in value of the appellants' real property which they seek as damages. In the italicized portion of paragraph 8 of the amended petition, heretofore quoted, the real estate in question was alleged to have retained its value of $6,250 until about the 15th day of December, 1958, at which time *it started to reduce and depreciate in value* until the 13th day of March, 1959, when the claim was filed, in the sum of $4,166 for which suit was brought.

The question remains whether the appellants are entitled to recover for the depreciation in value of their land, commonly regarded as the measure of recovery for permanent damages.

It is fundamental under our form of government that an indi-

vidual has the right and freedom to own private property. This right to own property includes all incidents of ownership, among which is the legal right to sell the property at its fair market value unimpaired by the wrongdoings of a third party. In the exercise of this legal right he is also free to select the time at which he wishes to sell such property. Therefore, an act of a wrongdoer which causes injury to one's private property can be measured in damages by the extent to which the fair market value of the property is impaired.

It is commonly recognized in our economy that the fair market value at a given time is the price in dollars which a willing seller would take for his property, and a willing buyer would pay for the property. The practical application of this simple rule to the facts presented by the pleading under attack is that a would-be purchaser of the property, in appraising the value of the property in his own mind, at a given time when the continuing nuisance is both apparent and real, would seriously consider the permanency of the nuisance in relative terms. That is, he would recognize the nuisance could be abated, but at the same time realize the sewage disposal plant was in the nature of a permanent structure, and that it was being operated by a municipality. In all probability, therefore, the prospective purchaser would materially discount the possibility of abating the nuisance to arrive at a price he would be willing to pay. The owner of the property at the same time would give the matter the same consideration to arrive at the price he would be willing to take. It is commonly known would-be purchasers are not prone to buy a lawsuit. For these reasons it must be recognized that whether the nuisance alleged in the case at bar is temporary or permanent is purely speculative, a matter which only future events can determine. But so far as the owner's present damage is concerned, viewing it as a practical matter, it is immaterial whether the nuisance is temporary or permanent. He has a legal right to the full enjoyment of his property *now*, unimpaired by the acts of a third party wrongdoer.

It is significant to note the provisions of 12-105, *supra*, neither classify damages nor require that the injuries be temporary or permanent. The statute merely requires *notice* to the city of an injury to person or property for which damages are claimed. It requires that the notice be given within three months after the injury *concerning which complaint is made.*

The foregoing construction and the practical approach was recognized and held to be controlling in *Steifer v. City of Kansas City,* supra. There an action was brought against the City of Kansas City for the creation and maintenance of a nuisance in the operation of a public dump. The plaintiffs alleged *the value of their premises was impaired* and their property taken for public use without compensation. It was alleged the city began operating the dump some time after April 26, 1949, and by reason of the negligent and careless operation of the dump, which was about seven hundred feet from the plaintiffs' dwelling house, the premises became unhealthy and unfit for occupation from and after May 15, 1950 (*approximately thirteen months after the operation began*). The petition then alleged many facts to substantiate the existence of a nuisance, and the court said:

". . . About May 15, 1950, the obstruction first caused surface water to accumulate and inundate a portion of the land of plaintiffs, and will continue to be inundated by reason of the obstruction of the surface water drainage. On August 12, 1950, and within three months after the *injuries complained of,* plaintiffs filed with the city clerk of Kansas City a notice of claim for damages, setting forth the time, place and circumstances relating to the *injuries complained of,* as herein related, and a copy of such notice was attached and made a part of the petition; that by reason of the creation and maintenance of the nuisance, in taking plaintiffs' land and the inundation of portions thereof, plaintiffs have suffered damages in the sum of $10,000, and they pray judgment that the nuisance be removed and abated, and for recovery of the damages alleged." (p. 796.) (Emphasis added.)

At the trial of the case evidence relating to the diminution in the market value of the real property from its highest and best use was rejected by the trial court on objection. On this point the jury was instructed to allow no more than nominal damages concerning the impairment of the market value of the real estate. On appeal this court said the city's dump *materially affected the market value of the plaintiffs' real property, and this was true whether the court ordered the nuisance abated or not.* In holding that the trial court erred to the prejudice of the plaintiffs in rejecting such evidence, it was said:

". . . Since plaintiffs were not permitted to show the actual existing market value and their loss by reason of the defendant's nuisance, they were denied the right to recover the damage to their real estate sustained by reason of the nuisance . . ." (p. 800.)

Contrary to the appellee's contention the issue was directly presented in the *Steifer* case, and the court held a landowner could

recover as damages the *diminution in market value of his land* caused by a continuing nuisance which had its inception more than three months prior to filing of a claim with the City, pursuant to 12-105, *supra,* where the *injury concerning which complaint was made* occurred within three months prior to the filing of such claim. Moreover, the plaintiffs were there also seeking abatement of the nuisance and the judgment of the trial court so ordered. The *Steifer* decision presents the controlling law of this case.

Similarly in *Watkins v. City of El Dorado,* supra, the sufficiency of a petition was challenged which sought damages for depreciation in the value of real property by reason of a continuing nuisance caused by the negligent operation of a sewage disposal plant. The petition alleged operation of the plant for more than a year prior to the 9th day of September, 1955, and that for more than three months immediately preceding such date acts of a more serious nature were alleged causing *the injury of which complaint was made.* The claim was dated September 7, 1955, and covered the three months immediately preceding such date. The court held the amended petition, which included the claim, alleged a continuing nuisance and "affirmatively pleads substantial compliance with the essential requirements of the provisions of G. S. 1949, 12-105, establishing conditions precedent to the maintenance of an action."

While the issue presently confronting the court was not directly challenged to the attention of the court by counsel in the *Watkins* case, it must be assumed the law of the *Steifer* case, decided four years prior thereto, was recognized. The appellants' brief in the *Watkins* case (on file in the State Library) reveals they did not urge the two-year statute of limitations, as a ground for sustaining the demurrer, because such fact did not appear on the face of the petition.

It is clear from the decision that where a plaintiff sustains injury for which he claims damages, regardless of their nature, against a city, recovery is limited to such damages as are sustained within the period of three months under 12-105, *supra,* immediately preceding the filing of the written statement of claim with the city. (*Jeakins v. City of El Dorado,* supra; *Cole v. Kansas City,* 141 Kan. 633, 42 P. 2d 940; *Steifer v. City of Kansas City,* supra; and *Watkins v. City of El Dorado,* supra.) However, it was held in *Avery v. City of Lyons,* 183 Kan. 611, 331 P. 2d 906, the statute makes no

limitation as to otherwise proper elements of damage for the *specific injury* occasioned, where the notice claimed such damages *as known consequences of an injury already sustained.*

Turning now to the appellants' claim and giving it the benefit of a liberal construction pursuant to the rules heretofore stated, it alleges the continuing nature of the nuisance during the five months immediately preceding the filing of their claim, but alleges in paragraph 6 thereof "SPECIFICALLY" the injury of which complaint is made, setting forth the dates of December 25th, 26th, 27th and 28th and continuing thereafter, all of which are within three months prior to the date the claim was filed. It is apparent the appellants have so regarded their claim by the allegations in paragraph 8 of their amended petition.

We therefore hold the appellants' written statement of claim filed with the appellee city on the 13th day of March, 1959, was sufficient to comply with the provisions of G. S. 1959 Supp., 12-105, and the amended petition states a cause of action.

The judgment of the trial court sustaining a demurrer to the amended petition, with amendments thereto, is reversed.

ROBB, J. (concurring specially): I agree with the opinion of the court reversing the trial court's order sustaining the demurrer to the amended petition. However, I think the opinion fails to make clear that the ruling on the demurrer is the only issue presently before this court and is the only question being decided in this appeal.