No. 43,875

THEODORE RARDIN, HAROLD TEASLEY, EDNA F. RARDIN and THE CITY OF PALCO, KANSAS, *Appellees*, v. FRANK MARCOTTE and ADELORE MARCOTTE, *Appellants*.

(398 P. 2d 351)

Opinion filed January 23, 1965.

*Norbert R. Dreiling*, of Hays, argued the cause, and *H. D. Oelschlaeger*, of Plainville, was with him on the briefs for the appellants.

*Robert Osborn* and *W. McCaslin*, of Stockton, argued the cause and were on the brief for the appellees.

The opinion of the court was delivered by

WERTZ, J.: This action was instituted by Theodore and Edna F. Rardin, upper landowners, and Harold Teasley, their tenant, plaintiffs (appellees), against defendants (appellants) Frank and Adelore Marcotte, lower landowners, for a permanent injunction against defendants' keeping and maintaining on their land a dam which caused water to back up on plaintiffs' land. Defendants secured joinder of the City of Palco as a party plaintiff (appellee), hereinafter referred to as the city, and then answered by requesting injunctive relief against the plaintiffs to keep them from emptying and draining sewage waters from above onto defendants' land, and also requested damages against the plaintiffs Rardins. The matter was submitted to the court on the testimony of the parties and an agreed statement of facts. The trial court entered judgment in favor of plaintiffs, and defendants have appealed.

Summarily, the stipulated facts were: The respective parties were the owners and tenants of the lands in question; the City of Palco was a municipal corporation; there was a natural watercourse draining the City of Palco running through plaintiffs' land and onto and through the land of the defendants and such watercourse drained into the south fork of the Solomon river; the City of Palco voted bonds in 1953 for the construction of a municipal sewage disposal plant and made application to the state for a permit to discharge sewage water from the plant into the waters of this state; a permit was granted to the city on July 13, 1953; the city purchased from the Rardins a tract of land for the building of the sewer disposal plant; the city completed its plant in 1954, enclosing the property with a steel fence, and the plant has been in use since that time; the sewage water runs into twelve-inch pipe which emerges from the ground seven feet south of the fence line between plaintiffs' and defendants' land; during the year 1954 defendants advised the mayor of Palco they did not want the sewage water running from the disposal plant onto their land; that if the city would pipe the disposal water across defendants' alfalfa ground to the pasture immediately east of the alfalfa ground, this would be acceptable; defendants' then counsel wrote to the city's mayor but made no claim for damages; in 1956 defendant met with the city and demanded it do something about the situation, but nothing was done prior to the filing of the action by the plaintiffs in 1962; in the spring of 1961 defendants constructed on their land a dam forty-eight yards long, not counting the spillway, across the watercourse; the line fence now stands in a pond formed by water from the dam; on May 14, 1963, a pond of sewage water impounded by said dam upon plaintiffs' land was approximately fifty-two yards wide at the fence, and was backed up in the watercourse over plaintiffs' land for approximately 160 yards, covering approximately one-half to one acre of ground; defendants never contacted plaintiffs Rardins with regard to the sewage water until the filing of the action in 1962.

It was further stipulated that at no time prior to building the dam in question nor at any time since have the defendants made application to or received permission from the chief engineer of the division of water resources of this state for construction of the dam in question.

Briefly stated, at the trial plaintiffs Rardins claimed that defendants unlawfully constructed the dam to Rardins' detriment and asked its maintenance be enjoined. The defendants contended the plaintiffs Rardins permitted the city to dump the treated sewage water onto Rardins' land, thereby causing an increased flow of water onto defendants' land to their damage; and as against the city, it was maintaining a nuisance by dumping the sewage water into the watercourse, causing excessive flow of the same over defendants' land. The city contended the defendants unlawfully constructed and were unlawfully maintaining the dam, having secured no permission from the chief engineer of the division of water resources of the state for its construction, and that the dumping of the treated sewage water into a natural watercourse and tributary to the Solomon river was authorized by proper state authority, and that such sewage water contains no noxious odors and does not constitute a nuisance.

The court made a general finding that the plaintiffs were entitled to judgment against the defendants for the removal of the dam and the restoration of the watercourse to normalcy, and that the defendants were entitled to no relief against either the city or the Rardins on the cross petition.

Defendants first contend the trial court erred in ordering the removal of the dam and the restoration of the channel of the watercourse. At the outset it may be stated that the legislature made it unlawful subsequent to April 2, 1951, the effective date of the passage of G. S. 1961 Supp., 24-105, for a landowner to construct or maintain a levee under conditions which had the effect of obstructing or collecting and discharging with increased force and volume the flow or surface water to the damage of the adjacent owner without first making application to the chief engineer of the division of water resources of this state for the construction of such dam or levee, and by G. S. 1961 Supp., 24-126, the legislature made it unlawful for any person, without obtaining the approval of plans for the same by the chief engineer of the division of water resources, to construct, cause to be constructed, maintain or cause to be maintained, any levee or other such improvement on, along or near any stream of this state which is subject to floods, freshets or overflows, so as to control, regulate or otherwise change the flood waters of such stream.

An analogous case was before this court in *Simon v. Neises,* 193

Kan. 343, 395 P. 2d 308, wherein the mentioned statutes were discussed and applied, and many of the authorities cited by the parties in the instant case were discussed. No useful purpose would be gained in again restating the rules of law therein applied which are applicable in this case.

Where, as in the instant case, the construction of the dam by the defendants caused the natural flow of the water, whether surface water or water from the sewage disposal plant, to be obstructed and discharged upon the land of the plaintiffs Rardins to their damage, the trial court, under the stipulated facts and evidence, properly enjoined the maintenance of the offending dam and properly directed its removal. The dam in question was constructed by defendants in violation of the aforementioned legislative mandate and, in fact, was unlawfully constructed and maintained at all times.

Defendants contend the trial court erred in not enjoining the city from discharging the water from the sewage disposal plant into the watercourse in question, and that the acts of the city in so discharging the water constituted a nuisance. The parties stipulated that the city had made application to the state for a permit to discharge sewage water into the waters of the state, and that in pursuance of said application a permit was granted to the city in 1953, signed by the governor, the attorney general and the secretary of the board of health as provided by G. S. 1949, Ch. 65, Art. 1, subsection "Water Supply and Sewage." In view of the stipulation, it cannot be said that the city was illegally discharging the sewage water into the watercourse in question.

We held in *Adams v. City of Arkansas City*, 188 Kan. 391, 400, 362 P. 2d 829:

"The gravamen of the offense in actions of this nature is not necessarily negligence but nuisance, and is dealt with by the law of nuisance, whether the nuisance is negligently caused or otherwise. It cannot be said that a sewage disposal plant is a nuisance at all times and under any circumstances, regardless of location or surroundings. Thus, it is not a nuisance *per se* under the generally accepted definition of such term. A sewage disposal plant may be so constructed, maintained or operated that, through the emission of noxious or disagreeable odors, or through the discharge of improperly digested sewage upon land or into a watercourse, it becomes a nuisance in fact of *per accidens*. (See, 40 A. L. R. 2d 1206 [§ 13].)"

There is no evidence in the record that the sewage water from the disposal plant ejected into the watercourse in question contained

any noxious or disagreeable odors or that any improperly digested sewage was discharged into the watercourse. Absent these prerequisites, the trial court did not err in refusing to enjoin the city.

Defendants concede in this case they are asking no money damage against the City of Palco by reason of the discharge of the sewage water into the watercourse running through defendants' land.

Defendants also contend the trial court erred in not allowing them damages against plaintiffs Rardins. The gist of their argument is that the Rardins permitted the city to eject the sewage water from the disposal plant into the watercourse on the Rardins' land which in turn increased the flow of the water onto the defendants' land to defendants' damage. We find no merit in defendants' contention. As stated, the city secured permission from proper statutory authorities to eject the sewage water into the watercourse on Rardins' land. The city had previously purchased the tract from the Rardins for the construction of the plant. The Rardins had no control over the acts of the city, nor was it incumbent upon the Rardins to bring any action against the city for the benefit of the defendants. There is no evidence the Rardins did any act to increase the flow of the water into the watercourse to defendants' detriment.

Other matters raised have been considered and found to be without substantial merit to authorize a reversal, and the judgment of the trial court is affirmed.